IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARLENE BENTLEY,

        Plaintiff,

vs.                          Case No. 13-1403-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On February 10, 2011, administrative law judge (ALJ) Michael D. Shilling issued the 1st ALJ decision, finding plaintiff not disabled (R. at 48-61). On September 15, 2011, the Appeals Council issued a decision remanding the case back to the ALJ (R. at 128-131).

4

On September 7, 2012, ALJ Michael D. Shilling issued the 2nd ALJ decision (R. at 14-32).  Plaintiff alleges that she had been disabled since July 13, 2007 (R. at 15).  Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2012 (R. at 17).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity after the alleged onset date (R. at 17).  At step two, the ALJ found that plaintiff had numerous severe impairments (R. at 18).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18-21).  After determining plaintiff's RFC (R. at 21), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 31).  At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 31-32).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 32).

**III.  Did the ALJ err in his consideration of the treating source opinions of Dr. Mhatre?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a

treating physician, and the opinion of an agency physician who
has never seen the claimant is entitled to the least weight of
all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).
When a treating source opinion is inconsistent with the other
medical evidence, the ALJ's task is to examine the other medical
source's reports to see if they outweigh the treating source's
reports, not the other way around.  Treating source opinions are
given particular weight because of their unique perspective to
the medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultative examinations.  If an ALJ
intends to rely on a nontreating physician or examiner's
opinion, he must explain the weight he is giving to it.  Hamlin
v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must
provide a legally sufficient explanation for rejecting the
opinion of treating medical sources in favor of non-examining or
consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and
severity of the claimant's impairments should be given
controlling weight by the Commissioner if well supported by
clinical and laboratory diagnostic techniques and if it is not
inconsistent with other substantial evidence in the record.
Castellano v. Secretary of Health & Human Services, 26 F.3d
1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  When a treating physician opinion is not given

controlling weight, the ALJ must nonetheless specify what lesser

weight he assigned the treating physician opinion.  Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

    Dr. Mhatre was plaintiff's treating physician in 2011-2012

(R. at 1719-1731, 1810-1823, 1870-1874, 1892-1918).  On March

19, 2012, he performed a medical examination on the plaintiff

(R. at 1893-1898).  He stated that due to severe pain, fatigue,

stiffness, and lack of concentration with mental fogging patient is totally disabled from any gainful employment.  He stated that plaintiff is not able to sit at one place for more than 10 minutes, she cannot stand for more than 10 minutes, she cannot lift more than 10-15 pounds.  He opined that plaintiff had difficulty walking for more than 2 blocks, and that, out of 30 days, she has difficulty getting out of bed in the morning at least 20 days (R. at 1898).

On March 20, 2012, Dr. Mhatre filled out a medical statement regarding fibromyalgia, and opined that plaintiff can stand for only 15 minutes at a time, and cannot stand in a workday.  She can sit for 30 minutes at a time, and for 2 hours in a workday.  She can lift 15 pounds occasionally, and 10 pounds frequently.  She can never bend or stoop.  She can occasionally raise her arms over shoulder level (R. at 1870).

On March 26, 2012, Dr. Mhatre wrote a letter indicating that plaintiff has difficulty standing, lifting or pushing, as well documented in her chart notes.  Because of the severe lack of concentration, mental fog, and also due to medication effects contributing to the memory problem, he opined that plaintiff was totally disabled from any gainful employment (R. at 1873).

After noting that Dr. Mhatre found that plaintiff could sit for 2 hours a day and cannot stoop, the ALJ stated that "the function of sitting for two hours a day would require some

8

stooping" (R. at 27).  The ALJ further found the statements from
Dr. Mhatre were inconsistent with each other and internally
inconsistent.  He then concluded: "The treating rheumatologist
is clearly trying to help the claimant and gives much credence
to her reports of her own limitations, even though she has not
followed his recommendations for exercise and trying new
medications" (R. at 27).

When the ALJ rejects an opinion from a treating physician,
he must give specific and legitimate reasons for rejecting the
opinion.  First, the ALJ stated that Dr. Mhatre is clearly
trying to help the claimant and gives much credence to her
reports of her own limitations.

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121
(10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr.
> Hjortsvang's opinion based upon his own
> speculative conclusion that the report was
> based only on claimant's subjective
> complaints and was "an act of courtesy to a
> patient." Id. The ALJ had no legal nor
> evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's
> reports indicates he relied only on
> claimant's subjective complaints or that his
> report was merely an act of courtesy. "In
> choosing to reject the treating physician's
> assessment, an ALJ may not make speculative
> inferences from medical reports and may
> reject a treating physician's opinion
> outright only on the basis of contradictory
> medical evidence and *not due to his or her
> own credibility judgments, speculation or
> lay opinion*." McGoffin v. Barnhart, 288 F.3d

1248, 1252 (10th Cir.2002) (quotation
omitted; emphasis in original). And this
court "held years ago that an ALJ's
assertion that a family doctor naturally
advocates his patient's cause is not a good
reason to reject his opinion as a treating
physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

The ALJ's finding that Dr. Covington's
opinion was based on claimant's own
subjective report of her symptoms
impermissibly rests on his speculative,
unsupported assumption. See Langley, 373
F.3d at 1121 (holding that ALJ may not
reject a treating physician's opinion based
on speculation). We find no support in the
record for the ALJ's conclusion. Nothing in
Dr. Covington's report indicates that he
based his opinion on claimant's subjective
complaints, and the ALJ's finding ignores
all of Dr. Covington's examinations, medical
tests, and reports. Indeed, the ALJ's
discussion of Dr. Covington omits entirely
his March 22, 2001 examination and report.
His April 3, 2001 statement might well have
been based on his recent first-hand
examination and observation of claimant
during this examination, performed less than
two weeks earlier, rather than on claimant's
subjective complaints, as the ALJ
speculated. See Morales v. Apfel, 225 F.3d
310, 317 (3d Cir.2000) (noting that the
treating physician's opinion may "reflect
expert judgment based on a continuing
observation of the patient's condition over
a prolonged period of time").

121 Fed. Appx. at 823-824.

    As Langley makes clear, the ALJ must have a legal or

evidentiary basis for asserting that a medical source report was

based on plaintiff's subjective complaints.  However, the ALJ did not cite to either a legal or evidentiary basis for his assertions that the opinions of Dr. Mhatre were merely an attempt to help the plaintiff, and that Dr. Mhatre gave much credence to her reports of her own limitations.  Nothing in his reports indicated that he relied only on plaintiff's subjective complaints or that his report was merely an act of courtesy to his patient.

Dr. Mhatre set forth his opinions on March 19, 2012, at the conclusion of a detailed physical examination, on March 20, 2012, in filling out a physical RFC form, and again in a letter on March 26, 2012.  As noted above, on March 19, 2012, Dr. Mhatre conducted a physical examination of the plaintiff (R. at 1893-1898).  He conducted prior examinations of plaintiff on May 20, 2011 (R. at 1719-1725) and August 22, 2011 (R. at 1810-1815).  He also subsequently examined her on June 26, 2012 (R. at 1913-1918).  In his letter of March 26, 2012, he states that her limitations in standing, lifting or pushing are well documented in her chart notes (R. at 1873).  As the court stated in Victory, the opinions of Dr. Mhatre in March 2012 may well have been based on his first-hand examination and observation of plaintiff during his examination at the same time that he set forth her limitations, and prior examinations, rather than on plaintiff's subjective complaints, as the ALJ speculated.

Second, the ALJ concluded that the opinions of Dr. Mhatre were inconsistent with each other and internally inconsistent. Admittedly, there are some differences; sitting is limited to 10 minutes in one report and 30 minutes in another; standing is limited in one report to 10 minutes and 15 minutes in another (R. at 1870, 1898). However, the ALJ also noted that Dr. Mhatre indicated on March 20 that plaintiff could sit for 30 minutes at a time and 2 hours a day, but could not stoop (R. at 27, 1870). The ALJ then asserted that the function of sitting for 2 hours a day would require some stooping (R. at 27). Stooping is defined as bending the body downward and forward by bending the spine at the waist, requiring full use of the lower extremities and back muscles. Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) (U.S. Dept. of Labor, 1993 at C-3).

However, the ALJ failed to cite to any evidence, medical or otherwise, that sitting for 2 hours a day requires the ability to stoop. The adjudicator is not free to substitute his own medical opinion for that of a medical source. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations;

he is not in a position to render a medical judgment.  Bolan v.
Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

    Furthermore, the court would note that the ALJ determined
that plaintiff could perform certain jobs, including that of a
document preparer (DOT 249.587-018), an administrative support
worker (DOT 209.587-010), and a lens inserter (DOT 713.687-026)
(R. at 32).  All three jobs are sedentary jobs (R. at 106).[1]
Sedentary work is work that primarily involves sitting.  20
C.F.R. § 404.1567(a).  The SCO indicates that stooping is not
required for any of the three jobs (SCO at 283, 341, 347).
There is absolutely no basis for the ALJ's assertion that
sitting for 2 hours a day would require some stooping.  These
findings by Dr. Mhatre are not inconsistent, and therefore
cannot serve as a valid basis to give little or no weight to his
opinions regarding plaintiff's limitations.  For these reasons,
the court finds that the ALJ failed to give legitimate reasons
for giving little weight to the opinions of Dr. Mhatre.

    The ALJ gave significant weight to other medical opinions,
including that of Dr. Winkler, a non-examining medical source
(R. at 26, 27-28).  However, the ALJ noted that Dr. Winkler did
not review the most recent records from Dr. Mhatre, and
therefore limited her to sedentary work, which was also in
accordance with other medical opinions (R. at 28).

---

[1] The ALJ mistakenly identified the lens inserter job as a light job (R. at 32), but the DOT identifies it as a sedentary job (SCO at 283).

The most recent records from Dr. Mhatre which were not
presented to Dr. Winkler included Dr. Mhatre's extensive
examination and 6 page report, dated March 19, 2012 (R. at 1893-
1898) and a subsequent examination and 6 page report, dated June
26, 2012 (R. at 1913-1918).  Thus, Dr. Winkler did not have
before her the extensive examination conducted by Dr. Mhatre
immediately prior to Dr. Mhatre offering his opinions regarding
plaintiff's limitations.  In light of the fact that Dr. Winkler
did not have before her all of Dr. Mhatre's records, including
his examination which immediately preceded his RFC opinions, and
in light of the fact that the ALJ limited plaintiff to sedentary
work, in part, because of the fact that Dr. Winkler did not have
those records before her, the failure to give legitimate reasons
for discounting the opinions of Dr. Mhatre become even more
significant.

The limitations set forth by Dr. Mhatre regarding
plaintiff's ability to sit and stand, if valid, would preclude
her from working.  In light of the illegitimate or invalid
reasons offered for discounting the opinions of Dr. Mhatre, the
court cannot speculate on whether the ALJ would have reached the
same conclusion regarding the weight he would have accorded to
the opinions of Dr. Mhatre, and the relative weight he would
have accorded to the other medical source opinions in this case,
had he not considered the invalid reasons for discounting the

14

opinion of Dr. Mhatre.  Therefore, this case shall be remanded in order for the ALJ to reevaluate the relative weight to be accorded to the opinions of Dr. Mhatre, and the opinions of the other medical sources.

Plaintiff also argues that the ALJ erred in his findings regarding plaintiff's credibility.  The court will not address this issue in detail because it may be affected by the ALJ's resolution of the case on remand after the ALJ gives proper consideration to the opinions of Dr. Mhatre, and determines the relative weight to accord to that opinion and the opinions of the other medical sources.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of March 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge